FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 30 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SHIRLEY JACKSON,

        Plaintiff,

v.

CALIBER HOME LOANS,

        Defendant.
----------------------------------------------------------------x

**OPINION & ORDER**

**18-cv-4282 (NG)(CLP)**

**GERSHON, United States District Judge:**

Plaintiff Shirley Jackson is a borrower suing the servicer of her mortgage loans, defendant Caliber Home Loans ("Caliber"), under sections 2605(e)(2)(C) and 2605(e)(3) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*

Plaintiff seeks leave to amend her complaint to "elaborate[] on the conduct of Caliber and [bring] in integral additional claims" to avoid "a serious miscarriage of justice." Caliber opposes the motion to amend and moves to dismiss the action pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, I find that the allegations in the Proposed Amended Complaint ("PAC") are insufficient to articulate a plausible claim under RESPA for which relief may be granted and that further amendment of the pleadings would be futile.

**I.    Real Estate Settlement Procedures Act ("RESPA")**

RESPA is a consumer protection statute that regulates the real estate settlement process, including loan servicing and assignments. 12 U.S.C. § 2601. Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." §

2601(a). Section 2605 of RESPA requires loan servicers to disclose pertinent information to borrowers, attempt to correct errors in servicing, and respond to relevant questions from borrowers.

In order to invoke the relevant RESPA provisions, a borrower must send "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that. . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). Such a request is referred to as a qualified written request, or QWR. Qualified written requests can be classified as requests for information or notices of error. A qualified written request that requests information relating to the servicing of a mortgage loan is a request for information, 12 C.F.R. § 1024.36(a), and a qualified written request that "asserts an error relating to the servicing of a mortgage loan is a notice of error. . . ." 12 C.F.R. § 1024.35(a). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan[,] and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." § 2605(i)(3).

Within 30 days of the receipt of a request for information or notice of error and, following an investigation, a servicer must make appropriate corrections to the borrower's account, provide a written explanation of the reasons the borrower thinks the account is not in error, provide the information requested, or provide a written explanation detailing "why the information requested is unavailable or cannot be obtained by the servicer." § 2605(e)(2)(A)–(C). If a servicer receives a notice of error "relating to a dispute regarding the borrower's payments," it "may not provide information regarding any overdue payment, owed by such borrower and relating to such period

2

or qualified written request, to any consumer reporting agency" for 60 days after receipt of the notice of error. § 2605(e)(3).

Borrowers have a private right of action arising from a servicer's failure to comply with these provisions of § 2605. § 2605(f). "To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a [request for information] or notice of error." *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015). Plaintiff brings this action alleging violations of §§ 2605(e)(2)(C) and 2605(e)(3), alleging that Caliber failed to properly respond to three qualified written requests, which she alleges are both requests for information and notices of error. In addition, plaintiff claims that Caliber improperly reported information regarding plaintiff to credit reporting agencies despite having received notices of error.

## II.     History of Plaintiff's Mortgage Loans

Plaintiff alleges that, on or about December 14, 2006, she obtained two loans ("Mortgage Loans") from Accredited Home Lenders, Inc., Caliber's predecessor-in-interest, mortgaging her residence at 3506 Clarendon Road, Brooklyn, New York 11203 for the sums of $436,000 ("First Loan") and $81,750 ("Second Loan").

On April 27, 2016, plaintiff filed for Chapter 7 bankruptcy protection. On August 7, 2017, plaintiff signed two loan modification agreements with Caliber for the Mortgage Loans. These loan modification agreements are annexed to the Complaint and PAC as Exhibit A. On November 10, 2017, plaintiff filed an Amended Notice of Presentment for an Order Granting Debtor's Motion to Approve Loan Modification. Through counsel, plaintiff set forth the terms of each loan modification and affirmed that, "[a]fter consideration of all her options, the Debtor believes that

proceeding with this loan modification is in her best interest and should be approved by the Court. Without this modification, Debtor will lose her home." On January 31, 2018, the bankruptcy court endorsed a Consent Order, authorizing the proposed loan modification agreements.[1]

## III. Plaintiff's Correspondence with Caliber

In early February 2018, just days after the bankruptcy court endorsed the loan modification agreements, Karamvir Dahiya, counsel for plaintiff, sent a letter requesting information pertaining to the First Loan and seeking to have Caliber treat the letter as a request for information and as a notice of error ("February Letter," annexed to PAC as Exhibit B).[2] The February Letter was sent by United States Postal Service priority mail express to Caliber Home Loans at two addresses—a street address and a post office box. The February Letter alleged that plaintiff's claimed error was "her dispute of the amount alleged to be due and owing contained in the foreclosure proceedings initiated against her and as well as those claimed in the bankruptcy court . . . ." Plaintiff's requests for information sought 20 categories of documents and information regarding the First Loan beginning at its inception in 2006. On or about February 28, 2018, Caliber provided a written response to the February Letter. Caliber's response specifically addressed 7 of the 20 requests for information, attached 35 pages of documents, and stated that "any other requested items that were not addressed in the response(s) above were deemed overbroad and/or unduly burdensome and will not be provided."

---

[1] While not included in plaintiff's PAC, the court takes judicial notice of this fact because it is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. of Evid. 201(b).

[2] The PAC states that this letter was sent on February 7, 2018, while defendant states in its brief that it was sent on February 3, 2018. Exhibit B to plaintiff's PAC indicates that while the letter was dated February 3, 2018, it was not tendered to the United States Post Office until February 6, 2018, and not delivered to defendant until February 7, 2018. For purposes of this motion, however, it is not material when the letter was sent.

On or about March 15, 2018, plaintiff sent another letter to Caliber, this time requesting information pertaining to the Second Loan and again seeking to have Caliber treat the letter as a request for information and as a notice of error ("March Letter," annexed to PAC as Exhibit B).[3] The March Letter was sent by United States Postal Service priority mail express to Caliber Home Loans at two addresses—a street address and a "Notice of Error, Request for Information, or QWR address." The March Letter, like the February Letter, disputed "the amount alleged to be due and owing contained in the foreclosure proceedings initiated against [plaintiff] and as well as those claimed in the bankruptcy court . . . ." Plaintiff's requests for information sought 20 categories of documents and information regarding the Second Loan beginning at its inception in 2006. On or about March 26, 2018, Caliber provided a written response to the March Letter. Caliber's response specifically addressed 7 of the 20 requests for information, attached 8 pages of documents, and stated that "Caliber has determined that any unanswered items to be overbroad and/or unduly burdensome; therefore, some of the requested information will not be provided."

On June 1, 2018, counsel for plaintiff wrote again to Caliber seeking information about the Mortgage Loans ("June Letter," annexed to PAC as Exhibit C). The June Letter was addressed to attorneys for Caliber Home Loans and the Loss Mitigation Department and was sent by e-mail. It states

> These Notes had seen some payments, which have not been reflected. Also, on the date of the execution of the Agreements, the bigger loan reflected an outstanding balance of $435,849.41 ("Unpaid Principal Balance." ¶ 2) followed by a "Deferred Amounts other Than Principal" of $288,652.85, with an uncollected fees of $17,775.60. Similarly, the smaller loan reflected "Unpaid Principal Balance" of $81,516.80 and "Deferred Amounts Other

---

[3] I note that in the text of both the initial complaint and the PAC, plaintiff alleges that she sent a single qualified written request on February 7, 2018 to Caliber regarding both the First and Second Loans. In fact, as seen in Exhibit B annexed to the PAC, plaintiff's February Letter related to the First Loan and the March Letter related to the Second Loan.

> than Principal" of $91,976.11 and an Uncollected Fees of $828.75. I am confused.
>
> To get clarity, I had sent a Qualified Written Request, and the numbers provided in this modification do not match up with the response of Caliber Home Loan. I need to ascertain the true nature and correct amount of debt and calculations before we proceed further in this matter. Also, the "Deferred Amounts," are very arbitrary numbers without any foundation. Please respond. We need to see how you reached those numbers. Thank you for your consideration.

The PAC alleges that Caliber never responded to the June Letter.

## IV. Procedural History

Plaintiff commenced this action on July 27, 2018. In the initial complaint, she alleged that, during the pendency of her Chapter 7 bankruptcy in 2017, she entered into loan modifications with Caliber out of fear that she would lose her home, despite the fact that the payments plaintiff claims she previously made on the Mortgage Loans were not reflected in the loan modification agreements and the amounts due and owing "dramatically" increased from the amounts on the original Mortgage Loans. She also alleged that she sent two letters to Caliber in February and June 2018 seeking, *inter alia*, the "entire loan histories of two loans since their origination, December 14, 2006," closing documents, and "details about the loans." Plaintiff further claimed that Caliber "provid[ed] information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff that were related to her qualified written request" and that, upon information and belief, Caliber "has engaged in a pattern and practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605." Plaintiff alleged that she "lives in constant fear of losing her home and suffers mental anguish as a result of actions and inactions of [Caliber]."

Caliber answered the complaint on August 22, 2018, admitting only that Caliber is a Delaware corporation with its principal place of business in Coppell, Texas and that on August 7,

2017, plaintiff executed two loan modification agreements. On September 13, 2018, Caliber filed a request for a pre-motion conference setting forth the bases for its anticipated motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(c). Caliber argued that plaintiff "failed to allege any damages that are attributable to the alleged violations or recoverable under RESPA," that the allegations were otherwise "conclusory and unsupported by facts," and that "Plaintiff's claim that Defendant has provided information to consumer reporting agencies regarding overdue payments in violation of RESPA ... is completely conclusory and unsupported by facts." Plaintiff responded to the pre-motion conference letter on September 17, 2018, and a pre-motion conference was held on November 5, 2018.

At the conference on November 5, 2018, plaintiff sought leave to amend the complaint to address the inadequacies identified by Caliber, arguing that the amendment would moot most, if not all, of Caliber's arguments. Caliber did not consent to an amendment of the pleadings. As a result, the parties agreed to a briefing schedule whereby plaintiff was directed to first move for leave to amend the complaint, defendant was directed to file its opposition to plaintiff's motion and its motion to dismiss the complaint at the same time, and plaintiff was permitted to file a reply.

On December 3, 2018, plaintiff served Caliber with a two-and-a-half-page motion to amend the complaint, in addition to her PAC. The PAC added New York State common law claims of breach of contract, breach of implied covenant of good faith and fair dealing, fraud, and unconscionability through improvident lending. Unlike the initial complaint, the PAC conceded that Caliber had responded to the qualified written requests but alleged that the "QWR request response is a hodge-podge. Numbers are disparately thrown in, with missing entries and sudden spurts to catch up. Record Keeping is evidently negligent. Without any meaningful disclosure, Caliber has failed in its statutory obligation and Ms. Jackson continues to suffer financial loss and

severe emotional distress." More specifically, the PAC alleged that "Caliber failed to provide the entire loan history of the plaintiff. The loan was originated in December 14, 2006. However, the loan history provided is only from March 5, 2009 for the first loan." As a result, plaintiff's PAC claims that plaintiff "was shocked that the servicer does not have a record of her payment and or is not deliberately providing it. She was very emotionally distressed for not getting the right breakdown and she started having nervous breakdowns and this has estranged her relationship with her husband, disrupting her family." Plaintiff also amended her complaint to add various categories of damages, including attorney's fees, the costs expended to send the QWRs by overnight mail, and "severe emotional distress." Finally, the PAC annexed three additional exhibits. Exhibit D includes the February and March 2018 responses by Caliber to plaintiff's February and March Letters. Exhibit E includes monthly checks written by plaintiff, drawn from TD Bank, paid to the order of Caliber on the First Loan, and dated between December 22, 2017 and November 26, 2018, and monthly personal money orders directed to pay the Second Loan dated between December 22, 2017 and November 26, 2018. Exhibit F is a letter from Caliber to plaintiff dated September 4, 2018 returning the August 24, 2018 money order for the Second Loan, which states that it is being returned "due to insufficient funds to cure the default on the loan." Exhibits E and F are not explicitly referenced in the PAC.

On December 21, 2018, Caliber served plaintiff with its opposition to plaintiff's motion to amend the complaint and a motion to dismiss the complaint. Plaintiff served and filed on ECF her reply to Caliber's motion to dismiss the complaint on January 31, 2019.

V.   **Standards of Review**

  A.   **Motion to Amend Pleadings**

When a party requests leave to amend its complaint, permission generally should be freely granted. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied, however, where the court finds undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the proposed amendment. *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998). Where, as here, a plaintiff has provided a proposed amended complaint, if the proposed amended complaint could not survive a Rule 12 motion to dismiss and granting leave to amend is unlikely to be productive, amendment may be appropriately denied as futile. *Wilson v. Toussie*, 260 F. Supp. 2d 530, 535 (E.D.N.Y. 2003); *see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (noting that "amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)"). Accordingly, after accepting all well-pleaded allegations in the PAC as true and drawing all reasonable inferences in favor of plaintiff, the court should deny leave to amend on the basis of futility if it appears that plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks, citations, and alterations omitted).

  B.   **12(c) Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss pursuant to Rule 12(b). *LaFaro v. N.Y. Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The court must

9

"accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (internal quotation marks omitted). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court may consider only the "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference." *Leonard v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation and citation omitted).

## VI. Federal Claims

Plaintiff alleges two violations of RESPA and seeks both actual and statutory damages as a result. First, plaintiff alleges, upon information and belief, that Caliber violated § 2605(e)(3), by "providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to her qualified written report." Second, plaintiff alleges that Caliber violated § 2605(e)(2)(C) by "failing to provide the Plaintiff with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 60 days after receipt of the Plaintiff's qualified written request." Specifically, plaintiff claims that the responses from Caliber did not address the loan history for either loan prior to Caliber's

servicing of the loan in March 2009 and that Caliber failed to provide the HUD statement for the First Loan.

### A. Whether the Letters Are Qualified Written Requests under § 2605(e)(1)(B)

Pursuant to RESPA, a qualified written request may take the form of a request for information or a notice of error. Plaintiff alleges that all writings sent to Caliber were qualified written requests and that they were each a request for information and notice of error. I therefore begin my inquiry by determining whether the writings of Mr. Dahiya to Caliber are appropriately classified as qualified written requests, as plaintiff alleges. *See Kilgore*, 89 F. Supp. 3d at 538.

#### 1. Whether the Letters Are Requests for Information

The February and March Letters, aside from referring to different loans, are nearly identical in seeking 20 categories of "pre-bankruptcy and post-bankruptcy information" from Caliber, including payments made on, and documents regarding, the Mortgage Loans. The June Letter, on the other hand, seeks information regarding how Caliber calculated the "Deferred Amounts" in the loan modifications "to ascertain the true nature and correct amount of debt and calculations."

I find that, based on the information provided in, and attached to, the PAC, the February and March Letters are properly classified as requests for information under RESPA because they request information regarding the servicing of mortgage loans. I find that the June Letter to Caliber was not a request for information because "materials concern[ing] the origination and alleged modification of [plaintiff's] loans, rather than servicing of her payments, [] do not relate to [defendant's] role as a servicer and accordingly fall outside the ambit of § 2605." *Gorbaty v. Wells Fargo Bank, N.A.*, 2014 WL 4742509, at *7 (E.D.N.Y. Sept. 23, 2014) ("*Gorbaty II*"); 12 C.F.R. 1024.35(b).

11

### 2. Whether the Letters Are Notices of Error

Both the February and March Letters describe themselves as notices of error and state that plaintiff seeks information "based on her dispute of the amount alleged to be due and owing contained in the foreclosure proceedings initiated against her and as well as those claimed in the bankruptcy court." Neither the February nor the March Letter, however, can be properly characterized as a notice of error because neither Letter states specifically how or why plaintiff believes the accounts are in error. *See* § 2605(e)(1)(B)(ii); *In re Griffin*, 2010 WL 3928610, at *6 (Bankr. S.D.N.Y. Aug. 31, 2010); *Roth v. CitiMortgage Inc.*, 2013 WL 5205775, at *7 (E.D.N.Y. 2013), *aff'd on other grounds*, 756 F.3d 178 (2d Cir. 2014).

While the June Letter mentions that the "[n]otes had seen some payments, which have not been reflected," the Letter does not indicate specifically which payments were made by plaintiff and not credited, or even whether the payments not "reflected" refer to payments on the original Mortgage Loans or on the loan modifications. Considering that the Mortgage Loans and loan modifications spanned approximately 144 months, plaintiff was required to do more than simply claim that "some" payments within that time span were not reflected in the response from Caliber to plaintiff's February and March Letters.

In sum, I find that none of plaintiff's correspondence is a notice of error under RESPA because none asserts an error with the servicing of plaintiff's mortgage loans with requisite specificity.

### B. Whether Plaintiff Plausibly Alleges a Violation of 12 U.S.C. § 2605(e)(3)

To state a claim under § 2605(e)(3), plaintiff must allege that (i) she sent defendant a notice of error regarding overdue payments; (ii) defendant submitted information regarding plaintiff's overdue payments to a credit reporting agency; and (iii) defendant submitted such information

12

within 60 days after defendant received plaintiff's notice of error. *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 111 (E.D.N.Y. 2011).

The PAC alleges in a conclusory fashion that "[u]pon information and belief, Caliber violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to her qualified written request." As held above, none of plaintiff's letters is a notice of error, and, as a result, plaintiff cannot state a claim pursuant to § 2605(e)(3). Even assuming, *arguendo*, that each letter was a notice of error that put Caliber on notice that there was a dispute regarding specific delinquent payments, plaintiff still fails to allege *when* negative information regarding her overdue payments was provided to credit reporting agencies. To trigger the protections provided by § 2605(e)(3), the defendant must have submitted such negative information to a consumer reporting agency within 60 days after receiving a qualified written request. § 2605(e)(3). The PAC, however, does not allege that Caliber reported overdue payments to a credit reporting agency in the 60 days following any of the correspondence. Without more, plaintiff's claim does not state a violation of § 2605(e)(3). *See Roth*, 2013 WL 5205775, at *9; *Midouin*, 834 F. Supp. 2d at 111–12 & n. 19.

For the foregoing reasons, I find that the PAC does not plausibly allege that Caliber violated § 2605(e)(3).

### C. Whether Plaintiff Plausibly Alleges a Violation of 12 U.S.C. § 2605(e)(2)(c)

While plaintiff attached dozens of pages of Caliber's responses to her February and March Letters, for purposes of this motion, I will accept as true plaintiff's allegation that Caliber's responses were deficient and accept that plaintiff's PAC properly alleges that Caliber failed to

13

provide plaintiff with all of the requested information regarding her loans and/or an explanation of why the information requested was unavailable as required by § 2605(e)(2)(c).

### 1. Whether Plaintiff Plausibly Alleged Actual Damages

To assert a claim under RESPA, a plaintiff "must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605." *Gorbaty v. Wells Fargo Bank, N.A.*, 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012) ("*Gorbaty I*") (quoting 12 U.S.C. § 2605(f)). Therefore, I turn to the damages alleged.[4]

"A plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." *Gorbaty I*, 2012 WL 1372260, at *5. "[S]imply saying that, for example, the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused," is not enough to survive a motion to dismiss. *In re Griffin*, 2010 WL 3928610, at *4.

#### i. Damages Related to Emotional Distress

Plaintiff alleges emotional distress damages under RESPA, stating that

> Ms. Jackson suffered severe emotional distress, they were caused by making payments on numbers that were never properly disclosed to her, rather she was made to sign the Agreement under threat that she would lose her home if she did not sign. The Caliber did not disclose all the payments that she has made on this loan and the only loan history provided is since 2009. She was shocked that the servicer does not have a record of her payment and or is not deliberately providing it. She was very emotionally distressed for not getting the right break-down and she started having nervous breakdowns and this has estranged her relationship with her husband, disrupting a family.

---

[4] Having determined that plaintiff did not plead a violation of § 2605(e)(3) and that only the February and March Letters are properly classified are qualified written requests, plaintiff can seek damages only relating to Caliber's failure to respond appropriately to those requests for information.

14

In both its pre-motion conference letter and memorandum in opposition to plaintiff's motion to amend and in support of its motion to dismiss the complaint, Caliber argues that plaintiff's conclusory allegations regarding her emotional distress damages are "insufficient to sustain a RESPA claim" because they are not "a result of any purported RESPA violation." On reply, plaintiff cites *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001), and *Benner v. Wells Fargo Bank, N.A.*, 16-cv-467 (D. Me. Mar. 29, 2018), and argues that emotional distress damages are available in RESPA actions. Plaintiff, however, misapprehends Caliber's argument. Caliber does not dispute that emotional damages are available in RESPA actions; rather, Caliber argues that plaintiff has failed to plead that her claimed emotional damages were caused by the RESPA violations alleged here.

I agree with Caliber. Plaintiff's claims for emotional damages are barred by RESPA's causation requirement because her injuries, as alleged, were not proximately caused by Caliber's failure to comply with § 2605(e)(2)(c). Plaintiff's claimed damages stem from her allegation that she was forced to sign an unconscionable agreement in order to keep her home, based on calculations that she believed were in error. Those alleged miscalculations, based on the failure of Caliber or Caliber's predecessor-in-interest to properly apply payments made on her account, predate the February and March Letters. Moreover, since I have already found that none of the correspondence was a notice of error, plaintiff cannot maintain that she was damaged by Caliber's claimed failure to correct any specific error in her account.

Said another way, to the extent plaintiff was emotionally injured, she "cannot disentangle the distress that was occasioned by the loan modification into which she voluntarily entered from that which may have been occasioned by Defendant's failure to respond fully to any of her requests for information . . . and for this reason has not alleged actionable emotional distress damages."

*Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 275 (S.D.N.Y. 2017); *see also Roth*, 2013 WL 5205775, at *8 ("Even if plaintiff and her husband suffered emotional distress from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused by defendant's failure to comply with RESPA, *i.e.*, the form and timing of its response to plaintiff's letters.").

### ii. Damages Related to Overnight Mail Services

Plaintiff alleges that she "incurred expenses to send the QWR by overnight mail services." Again, plaintiff must allege that the damages she incurred were proximately caused by Caliber's violation of RESPA in order to be compensable under the statute. Costs incurred after an incomplete or insufficient response may be recoverable under RESPA, but "costs incurred before the violation occurred, such as the expenses of preparing an initial request for information, cannot serve as the basis for actual damages." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017) (quoting *Pimental v. Ocwen Loan Servicing, LLC*, 2016 WL 6678523, *5–6 (S.D. Fla. Nov. 8, 2016)). "To permit a cause of action based on incidental costs would transform virtually all unsatisfactory borrower inquiries into RESPA lawsuits, and, in so doing, would subvert the very reason for the damages requirement in the first place." *Sutton*, 228 F. Supp. 3d at 274–75.

Because plaintiff seeks reimbursement only for the costs of her initial requests for information, she cannot recover the expense of mailing her February and March Letters by overnight mail.[5] *See Roth*, 2013 WL 5205775, at *8 n.6.

---

[5] Even if the June Letter were considered a qualified written request, it was sent by e-mail, which plaintiff does not allege incurred any overnight mailing costs.

16

### iii. Damages Related to Attorney's Fees

Plaintiff seeks reimbursement for the attorney's fees incurred because plaintiff "had to" hire Mr. Dahiya "to study her Modified Agreement and she paid for preparation for Qualified Written Request and for litigation cost for non-compliance."

As an initial matter, any attorney's fees incurred by plaintiff for studying her loan modifications and preparing initial qualified written requests could not be proximately caused by Caliber's non-compliance with RESPA, as they necessarily pre-date Caliber's response.

Plaintiff is also barred from claiming that the costs of litigation are "actual damages" under the statute because RESPA already contemplates the award of attorney's fees to successful litigants in § 2605(f)(3). That section provides that a borrower may recover "[i]n addition to [actual and statutory damages], in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." § 2605(f)(3). Were I to consider counsel's fees in relation to this litigation as "actual damages" under § 2605(f)(1), it "would render § 2605(f)(3) superfluous, which is, all other things equal, a result courts generally try to avoid." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1060 (7th Cir. 2018) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). Indeed, "simply having to file suit [does not] suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in." *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). I therefore find that the costs of bringing a RESPA claim are "insufficient to establish an entitlement to actual damages under § 2605." *Gorbaty II*, 2014 WL 4742509, at *6; *see Roth*, 2013 WL 5205775, at *8 n.6.

For the reasons stated above, plaintiff has not alleged any actual damages as a result of Caliber's alleged non-compliance.

### 2. Statutory Damages - Pattern or Practice of Noncompliance

RESPA provides that in addition to "any actual damages," borrowers may also recover "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." § 2605(f)(1)(A)–(B). Courts in this circuit have held that "the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability." *Dolan v. Select Portfolio Servicing*, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016); *accord Bonadio v. PHH Mortg. Corp.*, 2014 WL 522784, *5 (S.D.N.Y. Jan. 13, 2014) ("Although RESPA permits recovery of both actual and statutory damages, 'proof of actual damages is mandatory to recover on a § 2605(e) violation, and [ ] a § 2605(e) claim cannot stand on statutory damages alone.'"). Because plaintiff has not alleged any actual damages under the statute and therefore cannot establish liability, she cannot seek statutory damages.

Even if plaintiff had properly pleaded actual damages, plaintiff has nonetheless failed to allege a pattern or practice of noncompliance that would entitle her to statutory damages. This is because her PAC alleges at most two violations of RESPA based on Caliber's failure to adequately respond to her February and March Letters.[6] *See Roth*, 2013 WL 5205775, at *8 (two violations

---

[6] Even if I were to consider Caliber's non-response to the June Letter to be a third violation, I nonetheless find unavailing plaintiff's further reliance on *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430 (E.D.N.Y. 2013), for the proposition that more than two RESPA violations are sufficient to survive a motion to dismiss. In addition to the two claimed RESPA violations by the named plaintiff in that matter, *Kapsis* also involved a putative class of similarly situated individuals, and thus the alleged violations at issue numbered in the tens of thousands. Moreover, the court in *Kapsis* expressly stated that "there is no magic number of violations that create a 'pattern or practice of noncompliance[.]'" *Id.* at 445. I am unpersuaded that, even considering all three alleged RESPA violations in the PAC sufficiently pleads a pattern or practice

of RESPA were insufficient to establish "a pattern or practice" under § 2605(f)(1)(B)); *Gorbaty I*, 2012 WL 1372260, at *5 (same). Plaintiff attempts to bolster her claim by counting five RESPA violations in her PAC, arguing that Caliber failed to:

> (1) respond in a proper and timely way to Ms. Jackson. Consumer's "qualified written requests," (2) respond in a proper and timely way to Mrs. Consumer's "qualified written requests," (3) to provide the loss mitigation, loan modification policies, procedure maintained, and training provided at their offices for the same, (4) provide the entire loan history of the plaintiff, (5) provide the closing statements, including HUD statement etc. regarding the loans.

I find, however, that all five of these purported violations relate to two qualified written requests sent by plaintiff and are thus not five different incidents indicating a pattern or practice of violating the statute.

Since plaintiff has not properly alleged actual damages as a result of either RESPA violation, and since plaintiff has not alleged a sufficiently significant number of RESPA violations, plaintiff is unable to recover statutory damages.

## VII. Conclusion

Plaintiff's motion to amend the complaint is **DENIED**.

Defendant's motion to dismiss the complaint is **GRANTED**.

Since plaintiff was on notice of the deficiencies in her initial complaint through Caliber's pre-motion conference letter and the oral proceedings at the pre-motion conference on November 5, 2018, and since plaintiff has not provided the court with any indication that she could articulate a valid claim against Caliber in future pleadings, further leave to amend the complaint would be futile and is denied.

---

of noncompliance with the requirements of § 2605. *See Fournier v. Bank of Am. Corp.*, 2014 WL 421295, at *4 (N.D.N.Y. Feb. 4, 2014) ("three instances of noncompliance with RESPA is insufficient to establish a pattern or practice of noncompliance, particularly where Defendants responded to Plaintiff's fourth alleged QWR in a timely manner").

19

Having dismissed the federal RESPA claims, I decline to exercise supplemental jurisdiction over the state law claims alleged in the Proposed Amended Complaint, and they are dismissed without prejudice.

The Clerk of Court is respectfully requested to terminate the motions at Docket Nos. 18 and 19 and to close this case.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

July 29, 2019
Brooklyn, New York